**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**PITTSBURGH**

| | | |
|---|---|---|
| REV JUSTIN CALVIN, | ) | |
| | ) | |
| Plaintiff, | ) | 2:23-CV-01729-MJH |
| | ) | |
| vs. | ) | |
| | ) | |
| SCOTT TOWNSHIP, JACOB | ) | |
| STEPHENSON, CORY PETERSON, | ) | |
| ALLEGHENY COUNTY,  L. THOMAS | ) | |
| BODY SHOP AND TOWING, INC.,  DOES | | |
| 1-20, RICHARD N. THOMASJR., | | |
| | | |
| Defendants, | | |

## <u>MEMORANDUM OPINION</u>

On October 6, 2024, Pro Se Plaintiff, Justin Calvin, filed a Complaint against Defendants

Scott Township, Officer Jacob Stephenson, Officer Cory Peterson, Allegheny County, L.

Thomas Body Shop and Towing, Inc., and Does 1-20, alleging various constitutional and state

tort violations. (ECF No. 1). On October 25, 2023, Plaintiff filed an Amended Complaint, adding

Defendants Richard N. Thomas Jr and L. Thomas Body Shop and Towing, Inc. (ECF No. 8). On

November 8, 2023, Defendants Richard N. Thomas Jr and L. Thomas Body Shop and Towing,

Inc. filed a Motion to Dismiss for Failure to State a Claim with an accompanying brief. (ECF

Nos. 13 & 14). On the same day, Defendants Cory Peterson, Jacob Stevenson, and Scott

Township filed their Motion to Dismiss with an accompanying brief. (ECF Nos. 16 & 17). On

November 9, 2023, Allegheny County filed their Motion to Dismiss with an accompanying brief.

(ECF Nos. 19 & 20). On December 20, 2023, Plaintiff filed his Response to all of Defendants'

Motions to Dismiss. (ECF No. 24). Defendants did not file any Replies. All issues have been

1

briefed, and this matter is ripe for disposition. For the following reasons, Defendants' Motions to Dismiss will be granted in full. Plaintiff will be granted leave to amend as to all claims except his Eighth Amendment claim against Allegheny County.

## I.     Statement of Facts

The following facts are accepted as true for the purposes of Defendants' Motions to Dismiss. On September 19, 2023, Plaintiff was travelling within Scott Township when he was pulled over by Scott Township Police. (ECF No. 8, at ¶¶ 7-10). Officer Stephenson approached Plaintiff's vehicle and informed him that he had been pulled over because his vehicle registration was expired. (*Id.* at 12). In response, Plaintiff informed Officer Stephenson that he "reserves all his rights without prejudice" under the Uniform Commercial Code, explaining to Officer Stephenson that Plaintiff's reservation "is to not participate into any contract or commercial agreement that he didn't enter into willingly, intentionally, and knowingly." (*Id.* ¶¶ 13-14). Officer Stephenson then informed Plaintiff that there was a "non-extradition warrant" for his arrest and requested that Plaintiff provide identification. (*Id.* ¶¶ 15-19). Plaintiff refused to provide identification. (*Id.*).

Plaintiff then asked if he was under arrest, and Officer Stephenson allegedly informed him that he was not. (*Id.* ¶ 21). Plaintiff exited his vehicle and multiple officers "rushed in and tackled" Plaintiff against his vehicle. (*Id.* ¶ 23). Plaintiff alleges that he did not physically resist. (*Id.*). Plaintiff alleges that he "was struck hard against the side of the automobile" and that he "felt immense pain as a sharp object was [] applied forcibly" against the back of both of his ears. (*Id.*). Officer Stephenson told Plaintiff that if "[Plaintiff] had shown [Officer Stephenson] ID, [Officer Stephenson] would have given [Plaintiff] a citation." (*Id.* ¶ 29). Plaintiff alleges that his

ears began ringing and he felt dizzy. (*Id.* ¶¶ 30-31).The next thing Plaintiff remembers is entering the Scott Township Police Department. (*Id.*).

At the police department, Plaintiff spoke with a police officer that he identifies as "Officer Doe 1." (*Id.* 31-32). Plaintiff alleges that Officer Stephenson requested that he remove his clothing; Plaintiff refused this request, and Officer Stephenson allegedly yanked him by his left leg, causing Plaintiff to fall on the floor, injuring his tailbone and right hip. (*Id.* ¶¶ 34-35). Plaintiff alleges that Officer Stephenson removed both of his shoes and placed him in a cell with no lights. (*Id.* ¶¶ 36-37). Plaintiff alleges that, while in the cell, his ears began to pulse, and he realized that his lip was swollen and split. (*Id.* ¶ 38). Plaintiff also alleges that he overheard officers mocking Plaintiff, because he had a clergy license to the Universal Life Church. (*Id.* ¶ 40). After some time, Officers Stephenson and Peterson returned Plaintiff's shoes, removed him from the cell, and transported him in a police cruiser to Allegheny County Jail ("ACJ"). (*Id.* ¶¶ 42-43).

Upon arrival at ACJ, Officers Stephenson and Peterson escorted Plaintiff inside, where jail personnel took custody of Plaintiff. (*Id.* ¶ 45).  Plaintiff alleges that he demanded to speak with the County Sheriff, but he was informed by "County Jail Officer Doe 2" that "that is not how this works." (*Id.* ¶ 46). The officer began to search Plaintiff and demanded that Plaintiff open his mouth to be searched. (*Id.* ¶ 47). Plaintiff refused to comply with the search of his mouth "as a reservation of his rights and conviction of faith." (*Id.*). Plaintiff alleges that Officer Stephenson observed this interaction and laughed at Plaintiff's reservation of rights. (*Id.* ¶ 48). Plaintiff alleges that he again refused to comply with the search of his mouth, whereupon County Jail Officer Doe 2 forcefully searched his mouth. (*Id.* ¶ 49).  Plaintiff alleges that County Officers directed him to take off his clothes so that he could be showered; but, Plaintiff refused to

comply. (*Id.* 54-55). Plaintiff alleges that County Officers then forcefully stripped him, covered

him with a small tarp, and briefly placed him a small cell with a steel bench and no bedding. (*Id.*

¶ 55). Plaintiff alleges that various jail personnel and officers attempted to ask him health-related

questions and conducted other intake procedures. (*Id.* 53-66). Plaintiff refused to comply, again

citing his reservation of rights and religious convictions. (*Id.*).

ACJ officers then escorted Plaintiff to another cell, which he alleges smelled of a "noxious

chemical"; and, despite his complaints, jail personnel did nothing to mitigate his conditions. (*Id.*

67). The next day, Plaintiff was visited by three social workers, who attempted to ask him

questions without his attorney present. (*Id.* ¶ 68). Plaintiff refused to speak to the social workers.

(*Id.* ¶ 69). Plaintiff alleges that, after he refused to answer the social workers' questions, one of

the workers threatened to send Plaintiff to Western Penitentiary Psychiatric. (*Id.*).

Plaintiff alleges that he was then brought before Magistrate Judge Leah Williams Duncan via

video, where he identified himself as "Reverend James Peter, and [was] presented with three

documents charging him with three, unspecified violations." (*Id.* ¶¶ 72-74). Plaintiff alleges that

the Magistrate Judge released him on nonmonetary bond. (*Id.* ¶ 76). Plaintiff alleges that, after

signing some documents, he was escorted back to his cell and provided with his personal

belongings and clothing. (*Id.* ¶¶ 78-79). Plaintiff alleges that after he was dressed, a nurse from

Allegheny Health Network attempted to ask him questions about his mental status, but he

refused to answer any of her questions. (*Id.* ¶¶ 80-85).

On September 20, 2023, Plaintiff sought medical attention for his injuries. (*Id.* ¶ 86). Plaintiff

alleges that the injuries he suffered from his arrest included: lacerations to his left ear and bottom

lip, ear trauma and hearing loss, head injury, and bruising of the right hip bone. (*Id.*). Plaintiff

further alleges that he received a Computed Tomography (CT) Scan, and was diagnosed with head trauma, concussion, and chronic middle ear effusion. (*Id.* ¶ 87).

Plaintiff further alleges that his Jeep Cherokee was towed and impounded at L. Thomas Body Shop and Towing, Inc. (*Id.* ¶ 89). Plaintiff alleges he attempted to get his vehicle from the towing company, but they informed him that they would not return his vehicle and personal property within the vehicle unless and until Plaintiff provided a valid driver's license. (*Id.* ¶ 89).

## II.    Relevant Legal Standard

### A.  Pro Se Pleadings

As an initial matter, while courts have an obligation to read a pro se litigant's pleading liberally, a pro se plaintiff is not excused from complying with rules of procedural and substantive law. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). Although courts are directed to "liberally construe pro se filings," the plaintiff "is not exempt from procedural rules or the consequences of failing to comply with them." *Jones v. Sec'y Pa. Dep't of Corr.*, 589 F. App'x 591, 593 (3d Cir. 2014). "Courts are more forgiving of pro se litigants for filing relatively unorganized or somewhat lengthy complaints." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1611 (2020) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1217 (3d ed. 2019). Put simply, "judging the sufficiency of a pleading is a context-dependent exercise." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010). The circumstances surrounding the particular pleading, including the nature of the action, the sort of relief being sought, the availability of information, and other practical considerations must guide the inquiry into whether the litigant's statement of his claim qualifies as "short and plain." *See* Wright & Miller, *supra*, § 1217.

Furthermore, a "statement of a claim may be 'plain' even if it does not include every name, date, and location of the incidents at issue." *Garrett*, 938 F.3d 69 at 93 (citations omitted). "Missing details or superfluous material do not necessarily render a complaint unintelligible. Indeed, even if it is vague, repetitious, or contains extraneous information, a pro se complaint's language will ordinarily be 'plain' if it presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 93-94 (citations omitted).

**B. Fed. R. Civ. P. 12(b)(6)**

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be

6

enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail; but rather, whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

## III.    Discussion

### A.  Constitutional Claims

In his Amended Complaint, Plaintiff brings various constitutional claims against Defendants, alleging that Plaintiff's First, Second, Fourth, Fifth, Eighth, and Fourteenth Amendment rights were violated under 42 U.S.C. §§ 1983, 1985, & 1986.[1]

The Court will first address Scott Township's argument in its Brief in Opposition that Scott Township cannot be held liable for any of the alleged § 1983 claims, because Plaintiff fails to establish municipal liability under *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658 (1978). (ECF No. 17, at 23-24). In *Monell*, the Supreme Court held that a municipality or local government may be liable under § 1983 if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. *Id.* at 692. A municipality is responsible only for its deprivations of civil rights and cannot be held liable on a respondeat superior theory. *Id.* Therefore, liability against a municipality must be founded upon evidence indicating the government itself supported a violation of the plaintiff's constitutional rights. *Id.* at 694. When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).

Plaintiff fails to plead any facts in his Amended Complaint that Scott Township's policies or customs caused, supported, or acquiesced in a violation of Plaintiff's constitutional rights. For each of the alleged constitutional claims, Plaintiff relies on the actions of individual officers and jail personnel. Plaintiff pleads no facts to implicate Scott Township's policies or customs as

---

[1] In Defendants Stephenson, Peterson, and Scott Township's Brief in Opposition, (ECF No. 17, at 6), they indicate that it seems that Plaintiff's factual allegations against them are based upon only 42 U.S.C. § 1983. The Court agrees with these Defendants, and thus, will treat each constitutional claim against Defendants Stephenson, Peterson, and Scott Township as if Plaintiff brought the claims only under 42 U.S.C. § 1983.

motivators for these individuals' actions. As such, Plaintiff fails to establish municipal liability under *Monell* for Scott Township. All § 1983 claims against Scott Township will be dismissed.

The following subsections will discuss Plaintiff's constitutional claims against the other defendants.

i.   Claim I: First Amendment Violations

Plaintiff brings claims § 1983 claims against Officer Stephenson, Officer Peterson, and Allegheny County for alleged violations of his First Amendment constitutional right to "not be forced to speak." (ECF No. 8, at 17).

Officers Stephenson and Peterson

As regards the First Amendment claims against Officer Stephenson and Officer Peterson ("the Officers") for retaliatory arrest based upon Plaintiff's refusal to speak, the Officers argue that Plaintiff fails to plead facts sufficient to establish a First Amendment claim under 42 U.S.C. § 1983. (*Id.* at 17). Plaintiff argues that the Officers violated his First Amendment rights during the initial traffic stop by arresting him in retaliation for his refusal to provide identification. (ECF No. 8, at 17).

The First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 256, (2006). If an official takes adverse action against someone based on that forbidden motive, and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the injured person may generally seek relief by bringing a First Amendment claim. *Id.*

Plaintiff does not plead facts sufficient to establish a First Amendment violation for retaliation against the Officers.  Most of the alleged facts related to this claim describe actions

taken by personnel of Allegheny County Jail. The only facts plead by Plaintiff related to the Officers, are conclusory. Plaintiff does not plead any facts that he invoked his right to remain silent during the traffic stop or while he was in custody, nor does Plaintiff allege that he was retaliated against for invoking said right. To the extent that Plaintiff is attempting to allege that his refusal to provide identification to the Officers resulted in a retaliatory arrest, such allegations are not sufficient. The Supreme Court held in *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724-175 (2019), that a Plaintiff cannot sustain a claim for retaliatory arrest in violation of the First Amendment if they fail to plead and prove the absence of probable cause. Probable cause existed in the present case. Plaintiff's vehicle registration had expired, he refused to provide the Officers with his driver's license, and there was a non-extraditable warrant for Plaintiff's arrest.

Thus, Plaintiff fails to plead sufficient facts to establish that the Officers violated his rights under the First Amendment. The Officers Motion to Dismiss Plaintiff's First Amendment claims against them, at Count I, will be granted. Because the Court cannot say that amendment would be inequitable or futile, Plaintiff will be granted leave to amend these claims.

<u>Allegheny County</u>

As regards the First Amendment Claims against Allegheny County. Plaintiff argues that Allegheny County violated his First Amendment rights, because social workers, corrections officers, and health personnel from ACJ continued to ask him questions about his health, despite Plaintiff's refusal to answer. (ECF No. 8, at 17). Allegheny County argues that Plaintiff fails to plead facts sufficient to establish that his First Amendment Rights were violated. (ECF No. 20, at 6-8).

The First Amendment right to freedom of thought encompasses "the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714, (1977). It is well established that, in the

penological context, "an inmate does not retain those First Amendment rights that are inconsistent with his status as a prisoner or with the penological objectives of the corrections system." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, (1977) (quoting *Pell v. Procunier*, 417 U.S. 817, (1974)). To establish a First Amendment claim for retaliation, a prisoner must allege that: (1) he engaged in constitutionally protected conduct, (2) he suffered an adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor of the officials decision to take the action. *Wisniewski v. Fisher*, 857 F.3d 152 (3d Cir. 2017).

Plaintiff does not plead sufficient facts to establish that his First Amendment rights were violated by Allegheny County when he was at ACJ. Plaintiff does not allege sufficient facts that ACJ officials violated his First Amendment rights without a proper penological purpose. ACJ and other penological institutions, regularly screen persons coming into such facilities. As Allegheny County indicates in their Brief in Opposition, "all persons being lodged at the jail are asked at intake about their health status so that medications can be provided, if needed, since any they have on their person or in their belongings will be confiscated." (ECF No. 20, at 7). Similar questions are asked about inmates' mental health status so that measures can be taken to prevent self-harm. *Id.* Plaintiff alleges in his Amended Complaint that a county officer explained to him that the intake procedures, including the health-related questions, were for his safety. (ECF No. 8, at ¶ 62). The limited health-related questions asked by ACJ social workers, officers, and nurses served a penological purpose. Further, Plaintiff pleads that he refused to disclose any of his health information to ACJ officials. Plaintiff fails to plead sufficient facts to allege that Allegheny County violated his First Amendment rights. Allegheny County's Motion to Dismiss Plaintiff's First Amendment claims against it, at Count I, will be granted. Because the Court

cannot say that amendment would be inequitable or futile, Plaintiff will be granted leave to amend these claims.

ii.     <u>Claim II: Second Amendment Violations</u>

Plaintiff alleges that Officers Stephenson and Peterson violated his rights under the Second Amendment, because they seized and confiscated his firearm. (ECF No. 8, at 18). The Officers argue that Plaintiff fails to allege sufficient facts to allege a Second Amendment claim. (ECF No. 17, at 9-11). Plaintiff alleges no facts sufficient to establish a Second Amendment claim. The only facts Plaintiff alleges, related to a firearm, are conclusory statements indicating that his firearm was confiscated by the Officers. Plaintiff does not allege any facts that discuss the firearm, its confiscation, or whether he legally possessed the firearm. Plaintiff fails to allege sufficient facts to establish a Second Amendment claim. The Officers' Motion to Dismiss the Second Amendment claims against them, will be granted. Because the Court cannot say that amendment would be inequitable or futile, Plaintiff will be granted leave to amend these claims.

iii.    <u>Claims III & IV: Fourth Amendment Violations</u>

Plaintiff brings claims against Officer Stephenson and Officer Peterson, alleging that the Officers violated his Fourth Amendment rights by unlawfully seizing him. (ECF No. 8, at 18-19). The Officers argue that Plaintiff fails to allege sufficient facts to establish that they violated Plaintiff's rights under the Fourth Amendment. (ECF No. 17, at 11-14).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment further prohibits the issuance of warrants without probable cause. *Id.* A search or seizure by law enforcement is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. *Devenpeck v.*

12

*Alford*, 543 U.S. 146, 152 (2004). While "probable cause" is a fluid standard, it is a significantly lower burden to meet than required for a conviction. *Id.* (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)). "Whether probable cause exists depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152, (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

The Supreme Court has held that officers may make an arrest when they have probable cause to believe that a criminal offense was committed in their presence, even if that offense is a low-level misdemeanor, without violating the Fourth Amendment's protections. See *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (holding that officer did not violate Atwater's Fourth Amendment rights when the officer arrested her after observing Atwater operating a vehicle while in violation of Texas' seatbelt laws.).

Pennsylvania motor vehicle law makes it unlawful for any person to drive a vehicle with an expired registration. See 75 Pa.C.S. § 1301(a). Furthermore, under Pennsylvania law, drivers are required to carry a driver's license and present it to police officers upon their demand. See 75 Pa.C.S. § 1511(a); see also *Commonwealth v. Chisebwe*, 278 A.3d 354, 361 (Pa. Super. 2022) (upholding Defendant's conviction for refusing to present identification to officers in violation of § 1511(a).).

Plaintiff alleges that Officer Stephenson initiated the initial traffic stop because Plaintiff's vehicle registration was expired. (ECF No. 8, at ¶ 12). Plaintiff further alleges that he twice refused to present identification to Officer Stephenson. (*Id.* ¶¶ 17 & 19). Plaintiff also alleges that Officer Stephenson informed him that there was a non-extradition warrant for his arrest. (*Id.* ¶ 15). The facts alleged in Plaintiff's Amended Complaint are clear. Plaintiff was pulled over because he had an expired vehicle registration, in violation of 75 Pa.C.S. § 1301(a). After he

twice refused to provide Officer Stephenson with his driver's license, in violation of 75 Pa.C.S. § 1511(a), he was arrested. The observation of these offenses by Officer Stephenson were enough to establish probable cause and justify the stop and arrest of Plaintiff. As such, Officer Stephenson did not conduct an unlawful seizure of Plaintiff.

As relates to Officer Peterson, Plaintiff alleges that he was not present for the initial traffic stop and arrest. Officer Peterson had no contact with Plaintiff until he was transported from the police station to ACJ. Thus, Officer Peterson did not conduct an unlawful seizure against Plaintiff. The Officers' Motion to Dismiss the Fourth Amendment claims against them, at Counts III and IV, will be granted. As amendment would be futile, Plaintiff will not be granted leave to amend these claims.

iv.   Claim V: Fifth and Fourteenth Amendment Violations

Plaintiff alleges that Officers Stephenson and Peterson violated his due process rights under the Fifth and Fourteenth Amendments, because they "falsely arrested" him. (ECF No. 8, at 19). Plaintiff further alleges that the Officers violated his Fifth Amendment right to remain silent as set forth in *Miranda v. Arizona*, 384 U.S. 436 (1966). Officers Stephenson and Peterson argue that Plaintiff fails to allege sufficient facts to establish any of these claims. (ECF No. 17, at 14-16).

As discussed above, the Officers lawfully arrested the Plaintiff. Further, Plaintiff does not plead any facts in his Amended Complaint that can reasonably be interpreted to establish a Fourteenth Amendment due process claim against the Officers. Plaintiff only alleges, in a conclusory fashion, that his Fourteenth Amendment rights were violated. The Officers' Motion to Dismiss the Fourteenth Amendment claims brought against them, at Count V, will be

dismissed. Because the Court cannot say that amendment would be inequitable or futile, Plaintiff will be granted leave to amend these claims.

Turning to the claims that the Officers violated Plaintiff's Fifth Amendment right to remain silent under Miranda. Routine traffic stops do not qualify as a custodial setting for the purposes of *Miranda* protections. *See Berkemer v. McCarty*, 468 U.S. 420, 439-41 (1984). Such protections do not attach until a suspect is in a custodial setting. In *Vega v. Tekoh,* 597 U.S. 134, 150 (2022), the Supreme Court held that violation of *Miranda* does not necessarily mean that a Fifth Amendment violation occurred. A violation of *Miranda* protections cannot alone sustain a § 1983 claim. *Miranda* protections are intended to protect the Fifth Amendment right against self-incrimination. *Id.* at 141-42, 149. Therefore, the Supreme Court concluded that officers cannot be sued under § 1983 for *Miranda* violations, unless unusual circumstances are met. *Id.* at 153.

Plaintiff did not have the right to remain silent during the traffic stop. Further, Plaintiff has not pled any facts showing that the Officers compelled him to incriminate himself either during or after his arrest. In fact, Plaintiff alleges, multiple times, that he refused to speak with the Officers and provide identification. Even if the Officers had violated his protections under *Miranda*, which they did not, Plaintiff does not plead facts that would allow for a § 1983 claim to be brought for such violations. The Officer's Motion to Dismiss Plaintiff's Fifth Amendment *Miranda* violation claims, at Count V, will be granted. Because the Court cannot say that amendment would be inequitable or futile, Plaintiff will be granted leave to amend these claims.

It seems that Plaintiff is also bringing a due process claim against the Officers under the Fifth Amendment. Such a claim cannot be brought against state officers. Indeed, "the limitations of

the Fifth Amendment restrict only federal governmental action." *Nguyen v. United States Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983); *See House v. New Castle Cty.*, 824 F. Supp. 477, 491 (D. Del. 1993) ("[t]he fifth amendment's due process protections are limitations upon the federal government and have no reference to state action such as that alleged in the instant case"). The Officers' Motion to Dismiss Plaintiff's Fifth Amendment due process claims against them, at Count V, will be granted. As further amendment would be futile, Plaintiff will not be granted leave to amend this claim.

v.      Claim VI: Eighth Amendment Violations

Plaintiff alleges that Allegheny County violated his rights under the Eighth Amendment, because ACJ officers were deliberately indifferent to Plaintiff's treatment while he was detained, causing Plaintiff bodily injury and emotional distress. (ECF No. 8, at 20). Plaintiff alleges the officers were deliberately indifferent because they stripped off Plaintiff's clothes, detained Plaintiff in solitary confinement, and placed Plaintiff under suicide watch. Plaintiff further alleges that ACJ officers mocked his faith, revocation of rights, and threatened to have him committed to "Western Penitentiary Psychiatric." (*Id.*).

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment's guarantees are only applicable to convicted persons. *See Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243 (1983) ("[The] State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law") (citations omitted); *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (district court erred in accepting plaintiff's §

16

1983 claim as arising under the Eighth Amendment where Plaintiff "was not, at any time relevant to this case, a convicted prisoner").

Plaintiff was never criminally convicted in this case. Therefore, Eighth Amendment protections never attached to Plaintiff. All of Plaintiff's alleged facts relate to pretrial detainment. Further, Plaintiff was released after his appearance before the Magistrate Judge. Defendant Allegheny County's Motion to Dismiss Plaintiff's Eighth Amendment claims against it, at Count VI, will be granted. As further amendment of this claim would be futile, Plaintiff will not be granted leave to amend.

### vi.     Claim VI: Fourteenth Amendment Claim against Allegheny County

While the Eighth Amendment does not apply to pretrial detainees, the Fourteenth Amendment provides similar rights, like those provided to those convicted of crimes under the Eighth Amendment. We, therefore, evaluate Plaintiff's claims at Count VI of the Amended Complaint under the Fourteenth Amendment.

"[W]hen pretrial detainees challenge their conditions of confinement," the Court must consider whether there has been "a violation of the Due Process Clause of the Fourteenth Amendment." *Andrews v. Harper*, 576 F. Supp. 3d 305, 312 (W.D. Pa. 2021) (citing *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008)). "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 535–36, (1979)). "[A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government

purpose, or when the restriction is excessive in light of that purpose." *Id.* (citing *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)).

Plaintiff does not plead sufficient facts to establish a Fourteenth Amendment due process claim for his pretrial detainment treatment and conditions. Plaintiff does not allege facts to show that his treatment from ACJ personnel was intended to punish him. Instead, he alleges that he was subject to typical intake procedures and questioning, and he refused to comply with most of said procedures. Plaintiff also fails to allege facts to show that any of his treatment at was not related to a legitimate non-punitive government purpose. What Plaintiff describes are typical intake procedures. Thus, Plaintiff fails to plead sufficient facts to establish a Fourteenth Amendment due process claim against Allegheny County, at Count VI, and such claim is dismissed. Because the Court cannot say that amendment would be inequitable or futile, Plaintiff will be granted leave to amend this claim.

Inadequate Medical Care

As Allegheny County points out in their Brief in Opposition, Plaintiff also seems to bring a Fourteenth Amendment claim for inadequate medical care at Count VI. Allegheny County argues that Plaintiff does not plead sufficient facts to establish such a claim. (ECF No. 20, at 11-15).

"In order to establish a violation of [a plaintiff's] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999)). A prisoner bringing a medical-needs claim "must show more than negligence; he must show

'deliberate indifference' to a serious medical need." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993).

Plaintiff does not plead sufficient facts to establish a Fourteenth Amendment claim for inadequate medical care. Plaintiff was asked health-related questions by ACJ staff, which he refused to answer. Plaintiff further pleads that he was interviewed by medical staff, whereupon he reserved his rights and claimed that he refused to answer such questions because of his religious convictions. Plaintiff's own allegations show that ACJ medical staff merely attempted to investigate his medical status. The alleged stripping of Plaintiff's clothes, detainment, and placement on "suicide watch" are not enough to establish a deliberate indifference claim, as Plaintiff refused to apprise ACJ personnel about his medical or mental health status. Allegheny County's Motion to Dismiss Plaintiff's Fourteenth Amendment claim against it for inadequate medical care, at Count VI, will be dismissed. Because the Court cannot say that amendment would be inadequate or futile, Plaintiff will be granted leave to amend.

vii.     Claim VIII: Fifth and Fourteenth Amendment Claims against Richard Thomas and L. Thomas Body Shop

Plaintiff brings claims against Richard Thomas and L. Thomas Body Shop and Towing, Inc. for violations of his Fifth and Fourteenth Amendment rights (ECF No. 8, at 21). Plaintiff further alleges that these defendants conspired against him in violation of § 1983 (*Id.*). Richard Thomas and Thomas Body Shop and Towing, Inc. argue that Plaintiff fails to plead sufficient facts to establish any § 1983 claim against them because they are not state actors. (ECF No. 14, at 6-8).

To prevail on a § 1983 claim, a plaintiff must establish two elements: (1) that he was deprived of a federal right; and (2) that the deprivation was "committed by a person acting under color of state law." *Harvey v. Plains Twp. Police Dept.*, 635 F.3d 606, 609 (3d Cir. 2011)

(quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). It is well settled that a defendant cannot have civil rights liability under 42 U.S.C. § 1983 unless he or she acts "under color of state law." *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982).

Plaintiff does not plead any facts alleging that Richard Thomas or L. Thomas Body Shop and Towing, Inc. are state actors. The only facts plead by Plaintiff, related to these two defendants, are that, L. Thomas Body Shop and Towing, Inc., which is owned by Richard Thomas, towed Plaintiff's car to their facility after his arrest, and that, when Plaintiff attempted to get his car from the towing company, they asked him for his driver's license before they would return his vehicle. Such facts are not sufficient to establish that Richard Thomas or L. Thomas Body Shop and Towing, Inc. are state actors. Plaintiff fails to plead facts to establish that Richard Thomas and L. Thomas Body Shop are state actors; and thus, they cannot be held liable for any § 1983 claims. Richard Thomas and L. Thomas Body Shop Inc.'s Motion to Dismiss the § 1983 claims against them, at Count VIII, will be granted. Because the Court cannot say that amendment would be inequitable or futile, Plaintiff will be granted leave to amend these claims.

viii.   Claim VIII: § 1985 Claims

In addition to the § 1983 claims brought against Richard Thomas and L. Thomas Body Shop, Plaintiff brings § 1985 claims, alleging that Richard Thomas and L. Thomas Body Shop conspired against him. These Defendants argue that Plaintiff fails to establish a conspiracy claim under § 1985, because Plaintiff does not plead sufficient facts to establish any conspiracy was motivated by impermissible class-based discrimination. (*Id.* at 9-11).

Section 1985(3) provides:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person, property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against one or more of the conspirators

To establish a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person, property, or the deprivation of any right. *Lake v. Arnold*,112 F.3d 682, 685 (3d Cir.1997). A plaintiff must allege facts to establish both that "the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber v City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006).

Here, Plaintiff does not plead sufficient facts to establish a claim under § 1985(3). Plaintiff's only allegation, accusing defendants of being involved in a conspiracy, is that these defendants "collaborated with law-enforcement officers to unlawfully seize Plaintiff's automobile." (ECF No. 8, at 21). Plaintiff alleges no specific facts, describing any conspiratorial conduct, nor does he allege that said conduct was motivated by any discriminatory animus. Such conclusory allegations are not sufficient to establish a § 1985(3) claim. Richard Thomas and L. Thomas Body Shop and Towing, Inc.'s Motion to Dismiss the § 1985 claims against them, at Count VIII, will be granted. Because the Court cannot say that amendment would be inequitable or futile, Plaintiff will be granted leave to amend this claim.

ix.    Claim IX: Fifth and Fourteenth Amendment Violations against Allegheny County

Plaintiff brings §1983 claims against Allegheny County for violations of his constitutional rights under the Fifth and Fourteenth Amendments. (ECF No. 8, at 21-22). Plaintiff further alleges that Allegheny County is liable under § 1985 and § 1986. (*Id.*). Allegheny County argues that Plaintiff fails to allege sufficient facts to establish that Plaintiff's rights under the Fifth and Fourteenth Amendments were violated. (ECF No. 20, at 15- 17). Allegheny County further argues that Plaintiff fails to establish a § 1985 claim; and therefore, he cannot establish a § 1986 claim, because a successful § 1985 claim is required for a § 1986 claim. (*Id.*).

Plaintiff does not plead facts sufficient establish a § 1985 claim. Plaintiff does not allege any facts showing that Allegheny County or any ACJ personnel conspired to violate his constitutional rights, nor does he allege any facts to establish that any violations against him were made because of class-based animus. Thus, Plaintiff's § 1985 claims against Allegheny County will be dismissed. As § 1986 requires a successful § 1985 claim, Plaintiff fails to establish a § 1986 claim. *See* 42 U.S.C. § 1986.

Turning to Plaintiff's § 1983 claims, Plaintiff alleges his Fourteenth Amendment rights were violated, because: (1) he was only charged with summary traffic offenses and should not have been detained at the ACJ, and (2) he was not examined by "qualified medical staff" when he was strip searched and classified as "suicidal." (ECF No. 8, at 21-22).

To succeed on a Fourteenth Amendment substantive due process claim brought under §1983, a Plaintiff must show that "the defendant acted under color of state law, that at stake was a protected property interest or a liberty interest, that the defendant had a duty of care toward the plaintiff, and that a deprivation within the meaning of the Due Process Clause occurred." *Fagan v. City of Vineland*, 22 F.3d 1296, 1310 (3d Cir. 1994) (internal citations omitted). The test to

22

determine if due process has been violated is whether the official conduct shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). This standard encompasses "only the most egregious official conduct," and categorically excludes "liability for negligently inflicted harm" which is "beneath the threshold of constitutional due process." *Id.* at 849.

First, Plaintiff was charged with more than summary traffic offenses. Review of the state court docket, related to the charges discussed in this case, reveals that Plaintiff was charged with, in addition to summary offenses, one felony level offense and two misdemeanors. *See* MJ-05222-CR-0000167-2023.[2] Once at ACJ, Plaintiff was subject to the same intake procedures that were applied for every ACJ admittee. Further, ACJ and its staff made no decisions regarding the charges brought against Plaintiff. Thus, Plaintiff fails to plead sufficient facts to establish a Fourteenth Amendment claim related to this alleged conduct.

Second, Plaintiff alleged that he was subjected to a strip search by nonqualified medical personnel and deemed suicidal by jail personnel. This seems to be a reiteration of Plaintiff's First Amendment claim brought against Allegheny County, which is discussed above. Plaintiff does not include any facts to distinguish this claim from his First Amendment claim. Plaintiff fails to plead any facts showing that his rights under the Fourteenth Amendment were violated. Stating in a conclusory fashion that such rights were violated is not sufficient. Allegheny County's Motion to Dismiss Plaintiff's Fourteenth Amendment claims, at Count IX, will be granted.

---

[2] In evaluating the Complaint, the Court may consider the Magisterial District Court Docket MJ-05222-CR-0000167-2023, because it is a matter of public record and because it is a document "integral to" Plaintif's complaint. *Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 279 (3d Cir. 2018), *In re Asbestos Prods. Liab.Litig. (No. VI)*, 822 F.3d 125, 133 n. 7 (3d Cir. 2016).

Because the Court cannot say that amendment would be inequitable or futile, Plaintiff will be granted leave to amend this claim.

Plaintiff also brings a Fifth Amendment claim against Allegheny County, alleging that Allegheny County violated his right to remain silent and to not speak without counsel present. Plaintiff fails to plead facts to establish a Fifth Amendment claim. While at ACJ, Plaintiff was not in the custody of police; and therefore, he was not subjected to custodial interrogation. Further, Plaintiff does not have a right to counsel during the intake process at ACJ. Plaintiff does not plead any facts to show that he was compelled to incriminate himself in a custodial setting. Allegheny County's Motion to Dismiss Plaintiff's Fifth Amendment claims against it, at Counts IX, will be granted. Because the Court cannot say that amendment would be inequitable or futile, Plaintiff will be granted leave to amend this claim.

### B. Non-Constitutional Claims

i.   <u>Count VII: Assault and Battery</u>

Plaintiff brings state tort claims against Officers Stephenson and Peterson for assault and battery. (ECF No. 8, at 20). Plaintiff attributes the assault and battery to be the "unlawful arrest" he was subjected to and the "excessive force" that occurred during the arrest. Allegheny County argues that Plaintiff fails to plead sufficient facts to establish any assault or battery claim against the officers, because the arrest was lawful, and any force used against Plaintiff was reasonable. (ECF No. 20, at 18).

Under Pennsylvania law, "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person*." Renk v. City of Pittsburgh*, 641

A.2d 289, 293 (Pa. 1994) (quoting *Cohen v. Lit Brothers*, 166 Pa. Super. 206, 209, (1950)). "'An assault requires both the actor's intent to place the individual in imminent apprehension of harmful or offensive contact and the individual's actual imminent apprehension.'" Armstrong v. Gretsky, 2023 WL 2903977, at *8 (E.D. Pa. Apr. 11, 2023), aff'd, 2024 WL 1045230 (3d Cir. Mar. 11, 2024) (quoting *Glass v. City of Philadelphia*, 455 F. Supp. 2d 302, 365–66 (E.D. Pa. 2006)). A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty. "In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest. The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery. *Renk,* 641 A.2d at 293-94.

Although, as discussed above, Plaintiff was lawfully arrested, even an unlawful arrest itself is not enough to support claims of assault and battery. Plaintiff also fails to plead sufficient facts to establish an assault or battery claim against either Officer Stephenson or Peterson. Plaintiff alleges that, during his arrest, multiple officers "rushed in and tackled him" against his vehicle, pushed his face against the vehicle, and applied a sharp object against Plaintiff's ears. While Plaintiff alleges that Officer Stephenson pulled him over, he does not specify which officer or officers tackled him and applied the alleged force. Additionally, the alleged force used against Plaintiff consisted of expected and permitted acts done in furtherance of an arrest, given the circumstances. Plaintiff pleads that he refused to comply with Officer Stephenson's requests for identification multiple times, and he was arrested as a result. Plaintiff does not plead any facts to allege that Officer Peterson was involved with his arrest, nor does he plead that Officer Peterson ever touched him or threatened to use force on him. As such, Plaintiff fails to establish an assault or battery claim against the Officers. Officers Stephenson and Peterson's Motion to Dismiss

Plaintiff's assault and battery charges against them, at Count VII, will be granted. Because the Court cannot say that amendment would be inequitable or futile, Plaintiff will be granted leave to amend this claim.

    ii.    <u>Intentional Infliction of Emotional Distress Claims</u>

Plaintiff brings claims for intentional infliction of emotional distress ("IIED") against Officers Stephenson and Peterson, alleging that his initial arrest and the removal of his shoes while at the police department caused him emotional distress. The Officers argue that Plaintiff fails to plead sufficient facts to establish any IIED claim. (ECF No. 20, at 20).

Under Pennsylvania law, a plaintiff may sustain a claim for intentional infliction of emotional distress where the defendant "by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress." See *Gray v. Huntzinger*, 147 A.3d 924, 927 (Pa. Super. 2016) (citing Restatement (Second) of Torts § 46). In such cases, "'the gravamen of the tort of [IIED] is outrageous conduct on the part of the tortfeasor.'" Id. (quoting *Kazatkzy v. King David Memorial Park, Inc.*, 527 A.2d 988, 991 (Pa. 1981). Pennsylvania appellate courts define "extreme and outrageous conduct" as conduct "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Kane v. Chester Cnty. Dep't of Child., Youth & Fams.*, 10 F. Supp. 3d 671, 692 (E.D. Pa. 2014) (citing *Reeves v. Middletown Athletic Ass'n,* 866 A.2d 1115, 1123 (Pa. Super. 2004). To state a claim for intentional infliction of emotional distress, plaintiff must also suffer some type of resulting physical harm because of the defendants' outrageous conduct. Id. (citing *Reeves,* 866 A.2d at 1122–1123 (citing *Fewell v. Besner,* 664 A.2d 577, 582 (1995)). "In Pennsylvania, a plaintiff must support the claim of physical harm resulting from

emotional distress with competent expert medical evidence. *Id.* (citing *DeBellis v. Kulp,* 166 F.Supp.2d 255, 281 (E.D. Pa. 2001).

Plaintiff does not plead sufficient facts to surpass the requisite element of extreme and outrageous conduct to establish an IIED claim. As discussed above, based on the facts as plead, the force used against Plaintiff during the traffic stop was reasonable, given the circumstances of Plaintiff's arrest. Plaintiff does not plead any facts to establish that Officers Stephenson or Peterson's conduct was outrageous or extreme while he was at the police department. Further, Plaintiff does not plead any facts alleging that he suffered physical harm resulting from emotional distress that is supported by expert medical evidence. Officers Stephenson and Peterson's Motion to Dismiss the IIED claims against them, will be dismissed. Because the Court cannot say that amendment would be inequitable or futile, Plaintiff will be granted leave to amend these claims.

**IV.    Conclusion**

For the reasons stated above, Defendants' Motions to Dismiss will be granted in full. Plaintiff will be granted leave to amend all claims, except for the following: Plaintiff's Fourth Amendment claims for unlawful seizure against Officers Stephenson and Peterson; Plaintiff's Fifth Amendment due process claims against Officers Stephenson and Peterson; and Plaintiff's Eighth Amendment claim against Allegheny County.

Plaintiff has until September 6, 2024, to file an amended complaint. If an amended complaint is not filed by September 6, 2024, the clerk shall mark this case as closed. A separate order to follow.

DATE: 8/21/2024

Marilyn J. Horan
United States District Judge